## THE PRESIDENT, DIRECTORS & CO. OF THE ADAMS BANK *vs.* HENRY A. RICE & others.

A., who was the remaining partner of a manufacturing firm, which had been dissolved, said to B. that, as his business was so extensive, it was necessary for him to have a partner, so that, in case of his decease, there would be some one who could go on and close up the concern without the delay arising from an administration of his estate, and proposed to B. to take him as such partner, saying that he should have $1500 the first year, and the next year an interest in the business; to which B. assented; and thereupon an agreement was drawn and signed by them, as follows: " Copartnership. The subscribers have this day formed a copartnership, under the style of A. & Co., and will hereafter carry on the business formerly conducted by A. & C." Public notice of this agreement was given. Subsequently, and until the death of A., which occurred before the expiration of the first year, all purchases, sales and consignments of goods were made, and all drafts were drawn and promissory notes given, by A. & B. in the name of A. & Co.; and each of them exercised the full power of a partner, in relation to all their business. *Held*, that they were partners; and that, after A.'s death, B.. as surviving partner, had power to commence proceedings in insolvency which should include the estate of the firm.

BILL IN EQUITY against the assignees in insolvency of William B. Fox & Co. and the judge of insolvency for the county of Worcester, praying for an injunction to stay the proceedings.

The bill set forth that William B. Fox and George T. Rice Jr. had for some years been partners under the firm of Fox & Rice; that on the 8th of February 1861 they gave notice of the dissolution of their partnership, and on the same day the following notice was issued by Fox and Charles J. Delahanty, viz : " Copartnership. The subscribers have this day formed a copartnership, under the style of William B. Fox & Co., and will hereafter carry on the business formerly conducted by Fox & Rice. William B. Fox. Charles J. Delahanty. Worcester, Mass. Feb. 8, 1861 ;" that Delahanty had been employed by Fox & Rice as bookkeeper, and never contributed or agreed to contribute any capital, under the new arrangement, and was not to have any interests in the profits or losses, but assented that the notice should be issued and the business carried on under the name of William B. Fox & Co., at the request of Fox, who agreed that he should have fifteen hundred dollars a year for his services;

that Fox died on or about the 18th of August 1861, intestate, and no administrator of his estate had as yet been appointed; that on the 30th of August, Delahanty, as surviving partner, by petition in due form represented the estate of William B. Fox & Co. to be insolvent, and a warrant was accordingly issued by the judge of insolvency for the county of Worcester, and Henry A. Rice and Francis H. Dewey were subsequently chosen assignees and accepted the trust, and an assignment was executed to them of all the joint and separate estate of Delahanty, and all the estate of the firm of William B. Fox & Co.; that the petitioners are creditors of William B. Fox & Co. and of Fox, and, by a suit commenced against William B. Fox & Co. on the 17th of August, attached certain personal property purchased in the name of William B. Fox & Co., which suit is still pending; that Delahanty was merely a nominal partner of Fox, and the property purchased in the name of William B Fox & Co. in fact belongs to the private estate of Fox, and Delahanty had no authority or power to put the firm of William B. Fox & Co. into insolvency; and prayed for an injunction, and other relief.

The answer of the assignees set forth that Fox and Delahanty were partners, and each of them had and exercised the powers of a partner in relation to the business of the firm, and that the proceedings in insolvency were in accordance with the provisions of law; and annexed an affidavit of Delahanty, as a correct statement of the matters therein set forth, the material portions of which were as follows: "A few days prior thereto [February 8, 1861] the said Fox said to said Delahanty that Rice and himself had dissolved, and that, as the business was so extensive, it was necessary for him to have a partner, so that in case of his decease there would be some one who could go on and close up the concern, without the delay arising from an administration, and proposed to said Delahanty to take him as a partner, saying he should have $1500 the first year, and the next year an interest in the business, to which said Delahanty assented, and thereupon the following agreement was drawn and signed by them: [the same set forth above.] And a notice of the dissolution of the firm of Fox & Rice, and a copy of this

notice of the formation of the firm of William B. Fox & Co was published in the newspapers, and a printed circular contain· ing the notice of the dissolution of Fox & Rice, and of the for· mation of the firm of William B. Fox & Co., was sent to all parties with whom Fox & Rice had business connections. Sub· sequently, and until the decease of Mr. Fox, August 18, 1861, all purchases, sales and consignments of goods were made by said Fox and Delahanty in the name of William B. Fox & Co.; all drafts were drawn and promissory notes were given in the name of William B. Fox & Co.; and the said Fox and Dela· hanty each exercised the full power of a partner in relation to all their business, and were so known and treated."

The case was heard upon the bill, answer, and affidavit of Delahanty, which, by agreement of parties, was taken as true.

*E. Mellen & W. S. Davis*, for the plaintiffs. A communion of profits, that is, a joint and mutual interest in them, is essen· tial to a partnership. Colly. Part. §§ 16, 18, 19, 25. The sum to be received by Delahanty was not expressed to be as, or in lieu of, profits, but it was really a salary; the contract was ver· bal; no length of duration was fixed; Delahanty contributed no capital; his interest in the stock was not determined; no ac· count between them could be necessary; Delahanty, as between them, was liable for no losses; Fox, therefore, was really to purchase and own all the stock. The fair construction of the contract is, that Delahanty should assume the liabilities and per· form the duties of a partner for $1500 the first year, and be an actual partner the second year. *Hanson* v. *Paige*, 3 Gray, 239. If this was only a nominal partnership, the proceedings in insol· vency are irregular, and there is no partnership estate to be dis· tributed. *Parker* v. *Phillips*, 2 Cush. 175. *McDaniel* v. *King*, 5 Cush. 469. *Howe* v. *Lawrence*, 9 Cush. 553.

*T. L. Nelson*, for the administrator (who was appointed sub· sequently to the filing of the bill) of Fox.

*F. H. Dewey*, for the assignees, cited Colly. Part. § 65; 2 Story on Eq. § 1243; *Allen* v. *Wells*, 22 Pick. 450; *Howard* v. *Priest*, 5 Met. 585; *Burnside* v. *Merrick*, 4 Met. 537; *Harmon* v. *Clark* 13 Gray, 114.

*G. F. Hoar,* for Charles Merriam, a partnership creditor opposing the petition.

BIGELOW, C. J.  The contention in the present case is not whether, in the absence of an express agreement between the parties for the formation of a copartnership, the nature and character of the relation between them, and the mode in which they transacted their business and carried on a joint dealing, were such that the law will imply the existence of a copartnership; nor is it a question whether a person is clothed with the character of a copartner, contrary to his intent, as to third persons by operation of law, so as to render him liable on contracts made in the course of an alleged joint dealing.  The inquiry in the present case is of a different character.  It is admitted that the parties intended to form a copartnership, and, in pursuance of such intention, agreed to become partners together, and that subsequently they actually carried on business as joint traders. The question therefore is, whether, owing to the peculiar nature of the stipulations by which they undertook to regulate among themselves their joint dealings, the law will imply that they sustained toward each other a different relation from that into which they intended to enter.

That they were liable to third persons as copartners cannot be doubted.  They held themselves out to the world as such in express terms, and, whatever may have been their relation to each other *inter sese*, they were clearly chargeable as members of a copartnership by reason of having induced others to deal with them in that capacity.  Story on Part. §§ 64, 65.  On a careful analysis of the agreement between them on which their association and connection in a joint business were based, we are of opinion that they also sustained toward each other the relation of copartners.  Not only was it the express contract of the parties to form a copartnership, but they entered into stipulations and conducted their business in a manner which clearly show the existence of the essential ingredients which in law constitute that relation.  There was a contribution of capital and labor by one of the parties, and of labor, skill and credit by the other, for the carrying on of a joint business; there was

an actual joint trading; there was a purchase of property in their joint names; the title to property vested in them jointly; they were both liable for all the debts contracted; and they dealt with each other and with the world on the basis that a copartnership existed between them.

The only ground on which the petitioners contend that the agreement and acts of the parties did not create a partnership is, that there was no express stipulation between them for a community of profits, and that one of them in lieu thereof was to receive a specific sum in payment for his services. This position might be maintained, if that part of the contract which provides for the mode in which his compensation was to be made is to be interpreted literally and without reference to the subject matter of the agreement or to the intent of the parties, as manifested by other stipulations into which they entered. But this is not the true mode of interpreting the contract. We are to look at the situation and circumstances of the parties at the time it was made, the objects they had in view in forming a connection in business and in carrying on a joint dealing, and the nature and effect of all parts of the contract between them, in order to arrive at a just conclusion as to the real intent of the parties in making this particular stipulation. Viewed in this light, it is not correct to say that one of them was not to share in the profits of the joint business. The parties expressly agreed to form a copartnership and to carry on a business in their joint names. The declared purpose in making the contract was, in case of death of one of the parties, to vest the property in the survivor, so that he might control it and be able to close the joint business in like manner as in case of a surviving copartner. They imposed no limitation or restriction on their liability as copartners, either among themselves or as to third persons. There is nothing in the agreement or in the acts of the parties under it to indicate that either of them intended to assume any other relation than that which subsists between persons who hold toward each other the relation of copartners. Under such an agreement, it is a reasonable, natural and legal inference that the parties, in stipulating that one of

them should draw out a fixed sum for the first year, intended and understood that it was to be a deduction from the profits. Neither of them probably contemplated the contingency that no profits would be realized. On the contrary, it was probably anticipated that a much larger amount of profits would be earned than the sum which it was agreed that Delahanty should receive as his share for the first year. It was therefore in effect an agreement that he should receive a share of the profits which should not exceed in any event the sum of fifteen hundred dollars. Nor would it be going too far to say that it would harmonize with the intent of the parties as shown by other parts of the agreement, to hold that its true interpretation was that if there were no profits realized, no sum should be drawn out by Delahanty. But it is not necessary to go to this extent. It is sufficient that it was agreed that the sum to which he was to be entitled was to constitute a charge on the profits. The facts in this case are not unlike those which appear in *Gilpin* v. *Enderbey,* 5 B. & Ald. 954. The agreement there was, as in this case, to form a copartnership, and it was stipulated between the parties that one of them was to receive out of the profits the specific sum of two thousand pounds per annum ; or if there were no profits, or they were insufficient to pay this yearly sum, it was to be taken out of the capital. This was held to be a partnership. The agreement as to the fixed sum to be paid to one of the copartners annually, and other stipulations between the parties, constituted a contract which the court said was a partnership " of an unusual kind."

It was urged in behalf of the petitioners, that a strong implication against the existence of a copartnership was to be derived from that part of the agreement by which it was provided that Delahanty was to have an interest in the business the second year. The inference which the petitioners draw from this stipulation is that it shows that he was to have no interest in the joint business the first year. But we do not so understand it. Its true meaning is that his interest was to be based on the extent of the business after the first year, instead of being confined to a specific sum.

41 *

On these grounds we are of opinion that there was a subsisting copartnership at the time of the death of Fox, which authorized his surviving copartner to institute proceedings in insolvency.                                                  *Petition dismissed.*